LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN (111070)
AZRA Z. MEHDI (220406)
EX KANO S. SAMS II (192936)
JAMES G. GILYARD (220791)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
pcoughlin@lerachlaw.com
amehdi@lerachlaw.com
esams@lerachlaw.com
jgilyard@lerachlaw.com
      – and –
BONNY E. SWEENEY (176174)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
bsweeney@lerachlaw.com

ALTSHULER, BERZON, NUSSBAUM,
   RUBIN & DEMAIN
MICHAEL RUBIN (80618)
CLAIRE PRESTEL (235649)
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)
mrubin@altshulerberzon.com
cprestel@altshulerberzon.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD NOBLES, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>MBNA CORPORATION, et al.,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. C-06-03723-SBA

<u>CLASS ACTION</u>

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)

DATE:         October 24, 2006
TIME:         1:00 p.m.
COURTROOM:  The Honorable
                     Saundra B. Armstrong

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........................1

II.  STATEMENT OF FACTS ........................................................................................1

III. LEGAL STANDARD...............................................................................................4

IV.  ARGUMENT ............................................................................................................4

    A.    Rule 9(b) Does Not Apply to Plaintiff's UCL, FAS, CLRA, Unjust
        Enrichment or Breach of Contract Claims and Plaintiff Has Adequately
        Alleged These Claims ...................................................................................5

        1.    Plaintiff Need Not Plead UCL Claims with Particularity Under
                Rule 9(b) and Plaintiff Has Adequately Alleged UCL Claims...................5

        2.    Plaintiff Need Not Allege CLRA Claims with Particularity ......................8

        3.    Plaintiff Need Not Allege His Unjust Enrichment/Common Law
                Restitution Claim with Particularity ..........................................................9

        4.    Plaintiff Need Not Allege His Breach of Contract Claim with
                Particularity.............................................................................................10

    B.    Plaintiff's Common-Law Fraud Claims Satisfy Rule 9(b)'s Particularity
        Requirement................................................................................................12

        1.    Plaintiff Adequately Pleads a Misrepresentation and "Falsity".................13

        2.    The FAC Sufficiently Pleads Reliance, Materiality and Damages............15

V.   CONCLUSION.........................................................................................................17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) - C-06-03723-SBA

- i -

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ...................................................................................4

5

*Bhari Info. Tech. Sys. Pvt., Ltd. v. Allied Boston Bank, Inc.,*
    No. C 05-01223 SI, 2005 U.S. Dist. LEXIS 40094
    (N.D. Cal. Dec. 20, 2005) ...................................................................................8

6

7

*Boeken v. Philip Morris, Inc.,*
    127 Cal. App. 4th 1640 (2005), cert. denied, 126 S. Ct. 1567 (2005) ...............13

8

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996) ...................................................................................4

9

10

*Californians for Disability Rights v. Mervyn's, LLC,*
    39 Cal. 4th 223 (2006) ...................................................................................7

11

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990) .............................................................................11

12

13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ...................................................................................5

14

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
    35 Cal. 3d 197 (1983) ...................................................................................7, 8

15

16

*Conley v. Gibson,*
    355 U.S. 41 (1957)...................................................................................4

17

*Daniels v. PNC Bank, N.A.,*
    738 N.E.2d 447 (Ohio App. 2000)........................................................................16

18

19

*Fetter v. Wells Fargo Bank Texas, N.A.,*
    110 S.W.3d 683 (Tex. App. 2003)........................................................................16

20

*GlobeSpan, Inc. v. O'Neill,*
    151 F. Supp. 2d 1229 (C.D. Cal. 2001) ................................................................7

21

22

*Kaplan v. Rose,*
    49 F.3d 1363 (9th Cir. 1994) .........................................................................12, 13

23

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ...................................................................................6

24

25

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941)...................................................................................13

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) - C-06-03723-SBA

- ii -

1

2                                                                                    **Page**

3   *Kruse v. Bank of America*,
          202 Cal. App. 3d 38 (1988) ................................................................16
4

5   *Lectrodryer v. SeoulBank*,
          77 Cal. App. 4th 723 (2000) .........................................................9, 10

6   *Lim v. TV Corp. Int'l*,
          99 Cal. App. 4th 684 (2002) ..............................................................11
7

8   *McKell v. Washington Mut., Inc.*,
          No. B176377, 2006 Cal. App. LEXIS 1436
          (2d Dist. Sept. 18, 2006) ....................................................................6
9

10  *Netscape Comm''ns Corp. v. Fed. Ins. Co.*,
          No. C 06-00198 JW, 2006 U.S. Dist. LEXIS 9569
          (N.D. Cal. Feb. 22, 2006)....................................................................7
11

12  *Nordberg v. Trilegiant Corp.*,
          No. C-05-3246 MHP, 2006 U.S. Dist. LEXIS 15756
          (N.D. Cal. Apr. 4, 2006) .....................................................................8
13

14  *Norkin v. United States Fire Ins. Co.*,
          237 Cal. App. 2d 435 (1965) .......................................................13, 16

15  *People v. Superior Court*,
          9 Cal. 3d 283 (1973) ...........................................................................7
16

17  *Plumbers & Steamfitters Local Union 342 v. Calpine Corp.*,
          No. C 02-05376 JSW, 2005 U.S. Dist. LEXIS 4890
          (N.D. Cal. Feb. 11, 2005)..................................................................15
18

19  *Qarbon.com, Inc. v. eHelp Corp.*,
          315 F. Supp. 2d 1046 (N.D. Cal. 2004) ...........................................6, 7

20  *Saunders v. Superior Court*,
          27 Cal. App. 4th 832 (1994) ...............................................................6
21

22  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
          806 F.2d 1393 (9th Cir. 1986) ...........................................................17

23  *Sharp v. Hawkins*,
          No. C 03-5023 CW, 2004 U.S. Dist. LEXIS 22928
24        (N.D. Cal. Nov. 5, 2004)..........................................................4, 12, 13

25  *Shwarz v. United States*,
          234 F.3d 428 (9th Cir. 2000) .............................................................15
26

27  *Slack v. Fair Isaac Corp.*,
          390 F. Supp. 2d 906 (N.D. Cal. 2005) ........................................12, 13

28

1

2                                                                                                      **Page**

3   *Sprewell v. Golden State Warriors*,
        266 F.3d 979 (9th Cir. 2001) ...........................................................................................15
4
    *Strigliabotti v. Franklin Res., Inc.*,
5       No. C 04-00883 SI, 2005 U.S. Dist. LEXIS 9625
        (N.D. Cal. Mar. 7, 2005) ...............................................................................................9
6
    *Swierkiewicz v. Sorema, N.A.*,
7       534 U.S. 506 (2002) ........................................................................................................5

8   *Vess v. Ciba-Geigy Corp.*,
        317 F.3d 1097 (9th Cir. 2003) ...............................................................................6, 8, 9
9
    *Walling v. Beverly Enters.*,
10      476 F.2d 393 (9th Cir. 1973) ..........................................................................................4

11  *Walsh v. West Valley Mission Cmty. Coll. Dist.*,
        66 Cal. App. 4th 1532 (1998) .......................................................................................10
12
    *Winn v. McCulloch Corp.*,
13      60 Cal. App. 3d 663 (1976) ...........................................................................................15

14  **STATUTES, RULES AND REGULATIONS**

15  Federal Rules of Civil Procedure

16          Rule 9 ...................................................................................................................5

17          Rule 12(b) ............................................................................................................7

18  California Business & Professions Code

19          §17200.............................................................................................................5, 7

20          §17500...............................................................................................................5

21

22

23

24

25

26

27

28

## I.      INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Defendants[1] purport to rest their motion to dismiss on the arguments that plaintiff's FAC does not allege fraud with sufficient particularity and does not allege plaintiff's performance of a contractual condition precedent.  But the real issue raised by defendants' motion has nothing to do with the specificity or comprehensiveness of plaintiff's allegations.  Instead, defendants' entire argument rests upon a construction of defendants' "live check" contract that is contrary to the construction alleged in the FAC and contrary to the quoted text of that contract.  Defendants add a phantom condition to that contract – proof that the customer's account contains funds sufficient to pay the "live check" – that is nowhere contained in the actual handwritten document.

Construing the FAC allegations in plaintiff's favor and giving him the benefit of all reasonable inferences, as the Court must, plaintiff's allegations that defendants offered "live check" loan solicitations described as "valid immediately" up to the maximum amounts specified, while refusing to honor plaintiff's and class members' acceptance of those offers, are legally sufficient to state claims for breach of contract, fraud, violations of the Unfair Competition Law ("UCL"), the Consumer Legal Remedies Act ("CLRA"), the False Advertising Statute ("FAS"), and declaratory relief.

## II.     STATEMENT OF FACTS

As alleged in the FAC, a "live check" is a loan or extension of credit that banks, like MBNA, provide to their customers in the form of a check, draft or any other negotiable instrument that can be deposited in a bank or used for third-party payments.  ¶21.[2]  During the

---

[1]      Defendants as alleged in the First Amended Complaint ("FAC"), refer to MBNA Bank, N.A. ("MBNA Bank"), its parent MBNA Corporation, its affiliate MBNA Marketing Systems, Inc. and its successor parent Bank of America Corporation (collectively, "MBNA").

[2]      Unless otherwise noted, all paragraph ("¶") references are to plaintiff's FAC.

1   relevant period, defendants provided financial services to consumers, including extending credit

2   to millions of Californians through direct mail solicitations.  ¶¶19-20.[3]

3          Defendants developed a mailing list of hundreds of millions of current and potential

4   customers and targeted those consumers with various direct-mail solicitations.  ¶22.  In recent

5   years, defendants used the lure of so-called "access checks"[4] to solicit current and potential

6   customers to incur high-cost loans.  *Id.*  Defendants have sent, and continue to send, plaintiff and

7   other class members live check solicitations offering credit lines, typically between $1,000 and

8   $3,000, but sometimes even more.  ¶¶23, 24.

9          In or about June 2004, plaintiff received the following "live check" solicitation from

10  MBNA:

11                    **Please use these checks before August 31, 2004**

12                                        Can be written for any amount up to

13                                                    **$2,280***

14                                        Your checks are valid immediately!

15  Dear Donald Nobles,

16  The checks below work like any regular check, except that the money comes
    directly from your GoldOption® account.  And you can write them for any
17  amount, up to $2,280.  Just be sure to sign each one.

18                    **Use your checks for anything, including cash**

19

20

21

22  _____

23  [3]     Incorporated less than two decades ago with an initial base of 600,000 accounts and $209
    million in receivables, defendant MBNA Corporation, through MBNA Bank, soon became the
24  world's largest independent credit card lender, providing credit cards and other products to 51
    million consumers, at least four million of whom resided in California during the relevant period.
25  ¶19.  As of December 2004, MBNA had $143 billion in managed receivables and serviced 20%
    of all outstanding U.S. Visa/MasterCard credit card balances – all without a single brick-and-
26  mortar branch location.   ¶20.  The source of this outstanding growth has been MBNA's
    widespread and sophisticated use of direct mail solicitations.  *Id.*

27  [4]     "Access check" is a term coined by defendants to refer to their live checks.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) - C-06-03723-SBA          - 2 -

You can pay bills, make purchases, or simply write one large check to yourself. For each additional advance, we will restart your initial monthly repayment term and recalculate your monthly payment amount.  All we ask is that you use them before August 31, 2004.

*All account terms quoted are accurate as of 6/7/04 and may have subsequently changed.  This pertains to your MBNA® account ending in 7907.  Access to your account is subject to availability of funds.
**Important Reminder:** The transaction fee on each advance is 3% (Min. $5).  Borrowing up to the full amount of your available credit may result in an overlimit fee because fees and finance charges may cause your balance to exceed your limit.[5]

¶25.

On July 25, 2004, plaintiff wrote one of the attached checks for $2,000 ($280 less than the amount represented to be available immediately).  ¶27.  Plaintiff then deposited that check into his Wells Fargo account and began using the funds to pay bills.  *Id.*  Ten days later, plaintiff's "live check," which defendants had represented would be "valid immediately" as long as it was for an amount less than $2,280, was returned to plaintiff marked "insufficient funds," leaving his Wells Fargo account overdrawn by $704.19.  *Id.*  Wells Fargo charged Mr. Nobles a $7.00 returned item fee as a result of the overdraft.  *Id.*  MBNA also charged plaintiff a $39.00 returned check fee.  *Id.*

Contrary to defendants' representations that the proffered live check was "valid immediately" for up to the specified amount of $2,280, the check was valid only upon completion of a complex multi-variable credit evaluation of plaintiff's financial condition.  ¶29. Defendants never informed plaintiff of this critical fact.  *Id.*

MBNA's solicitation stated vaguely and in fine print that "access" to Mr. Nobles' account was subject to "availability of funds."   But the solicitation never explained what defendants meant by "access" or "availability," or what "funds" were at issue.  ¶30.  Indeed, to the extent MBNA's fine-print disclaimer could be understood at all, it was entirely inconsistent with the statement, in much larger print, that the live check could be written for "any amount up

---

[5]    Text following the asterisk was in fine print in the original document.

1   to $2,280" and was "valid immediately." *Id.*   Other fine print was similarly inadequate to

2   disclose defendants' credit evaluation practices.  ¶32.

3        During the relevant period, defendants sent several more "live check" solicitations to

4   Mr. Nobles, including one stating that he had "$13,950 credit available to use immediately."

5   ¶36.  Defendants also sent substantially similar "live check" solicitations, each with a specific

6   designated maximum available amount, to the other members of the class.  ¶33.  In substance,

7   those solicitations promised that the recipients could immediately cash the attached checks by

8   filling them out for any amount up to a specified limit.  *Id.*  In fact, however, defendants did not

9   honor any of these live checks without first undertaking a complex credit evaluation, and

10  defendants refused to fund the checks of those, like plaintiff, who did not meet defendants'

11  unstated credit check standards.  As a result, plaintiff and the other members of the class were

12  deceived and continue to be deceived by defendants' false representation that the checks are

13  "valid immediately!"  ¶34.

14  **III.   LEGAL STANDARD**

15       Under Rule 12(b)(6), "the court accepts the facts alleged in the complaint as true."

16  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A court must deny a

17  motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in

18  support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46

19  (1957).   "All allegations of material fact are taken as true and construed in the light most

20  favorable to the nonmoving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

21  1996).

22  **IV.    ARGUMENT**

23       "In the Ninth Circuit, entering into an agreement 'with the secret reservation not to fully

24  perform it' is cognizable fraud."  *Sharp v. Hawkins*, No. C 03-5023 CW, 2004 U.S. Dist. LEXIS

25  22928, at *13 (N.D. Cal. Nov. 5, 2004) (quoting *Walling v. Beverly Enters.*, 476 F.2d 393, 396

26  (9th Cir. 1973)).   In the present case, defendants committed fraud by secretly imposing a

27  condition on their "live check" solicitations that defendants did not disclose to consumers, and

28  by affirmatively misleading consumers by couching its solicitations in large-font text stating that

the "live checks" were valid immediately.  While defendants purported to argue that the FAC does not allege this fraud with sufficient particularity, defendants' real argument is that plaintiff cannot state a claim because the secret condition *was* adequately disclosed.

For the reasons stated below in §IV.B., plaintiff has satisfied the pleading requirements of the federal rules, including Rule 9(b), because plaintiff has specifically alleged all facts necessary to prevail on their claims of fraud – and to provide defendants ample notice of those facts.  First, as shown in §IV.A., plaintiff demonstrates why most of the claims for relief in this case are not subject to the heightened standards of fraud pleading at all.

### A.   Rule 9(b) Does Not Apply to Plaintiff's UCL, FAS, CLRA, Unjust Enrichment or Breach of Contract Claims and Plaintiff Has Adequately Alleged These Claims

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  As discussed below, Rule 9(b)'s particularity requirement applies only to plaintiff's common-law fraud claims, and plaintiff has more than satisfied the Rule's requirement with respect to those claims.  Except for causes of action for fraud or mistake, "Rule 8(a)'s simplified pleading standard applies to all civil actions."  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513 (2002). Plaintiff has also satisfied the lenient Rule 8 pleading standards that apply to the remainder of his claims.

### 1.   Plaintiff Need Not Plead UCL Claims with Particularity Under Rule 9(b) and Plaintiff Has Adequately Alleged UCL Claims

Plaintiff brings Counts VI and VII pursuant to §§17200, *et seq.*, and §§17500, *et seq.*, of California's UCL, Cal. Bus. & Prof. Code §§17200, *et al.* and FAS, Cal. Bus. & Prof. Code §§17500, *et seq.*  ¶¶85-97; *see also* ¶¶39, 43.  The UCL is comprised of five prongs, each of which can serve as an independent basis for liability: (1) unlawful business acts and practices; (2) unfair business acts and practices; (3) fraudulent business acts and practices; (4) unfair, deceptive, untrue or misleading advertising; and (5) any act prohibited by §§17500-17577.5 of the California Business and Professions Code.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180-81 (1999).  The purpose of the UCL "is to protect both consumers and

1 | competitors by promoting fair competition in commercial markets for goods and services."
2 | *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 949 (2002).

3 |   Defendants' arguments that Rule 9(b) applies to plaintiff's UCL claims fail for two
4 | reasons.  First, plaintiff does not rely solely on the "fraud" prong of the UCL, but also alleges
5 | claims under the "unfair" and "unlawful" prong.  ¶¶2, 3, 38, 39, 43(e)-(i), 46, 83, 87, 88, 91, 95.
6 | These claims are not "grounded in fraud," and are not governed by Rule 9(b).

7 |   In *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097 (9th Cir. 2003), the Ninth Circuit held that
8 | the particularity requirement of Rule 9(b) applies only when a claim is "grounded in fraud."  *Id.*
9 | at 1103.  Claims are "grounded in fraud" when plaintiffs allege "a unified course of fraudulent
10 | conduct and rely ***entirely*** on that course of conduct as the basis of a claim."  *Id.*[6]  An actionable
11 | "unfair" claim under the UCL alleges "any practice 'whose harm to the victim outweighs its
12 | benefits.'"  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).[7]  An actionable
13 | "unlawful" claim alleges practices that are prohibited by law, whether "civil or criminal, federal,
14 | state, or municipal, statutory, regulatory, or court-made."  *Id.*; ¶85-93.  Because these elements
15 | and plaintiff's corresponding allegations are not grounded in fraud – let alone "entirely" in fraud
16 | – plaintiff's claims under the UCL's "unfair" and "unlawful" prongs are not governed by Rule
17 | 9(b).  *Vess*, 317 F.3d at 1103; *Qarbon.com, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1052
18 | (N.D. Cal. 2004).

19 |   Second, because the "fraud" prong of the UCL bears little resemblance to common-law
20 | fraud, Rule 9(b) is inapplicable even to plaintiff's claim under that prong.  Under the UCL, "[a]
21 | fraudulent business practice is one which is likely to deceive the public."  (*McKell v. Washington*
22 | *Mut., Inc*., No. B176377, 2006 Cal. App. LEXIS 1436, at *17 (2d Dist. Sept. 18, 2006).)  Thus,
23 | "'[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the
24 | consumer, such as by failure to disclose other relevant information, is actionable under' the

---

26 | [6]  All emphasis is added unless otherwise noted.

27 | [7]  Here, as elsewhere, all citations are omitted unless otherwise noted.

28 |

1   UCL." *Id.*  Under the UCL, a plaintiff can prove his case without evidence of intent, scienter, or

2   actual reliance.  *See, e.g.*, *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d

3   197, 211 (1983); *see also People v. Superior Court*, 9 Cal. 3d 283, 288 (1973).[8]  For instance, the

4   fact that the live check solicitations included a small print footnote buried within the large print

5   bolded text that account access is subject to "availability of funds" cannot overcome the

6   deceptive impact on consumers – such as plaintiff – of defendants' more prominent

7   representation that the checks are "valid immediately" up to the amount specified in the offer.

8   ¶¶26, 27, 30-35.   Because plaintiff can establish liability under the fraudulent prong by

9   demonstrating that members of the public are likely to be deceived, he need not plead with the

10  specificity required by Rule 9(b).

11          Judge Ware made this precise point when he rejected defendant's 9(b) arguments in

12  *Qarbon.com*, a case involving a counterclaim for unfair competition alleging that counter-

13  defendant made "false representations about [a] patent . . . ."  315 F. Supp. 2d at 1052.

14          Insofar as eHelp alleges that Qarbon is engaged in "fraudulent business
            practices," eHelp does not have to plead with Rule 9(b) specificity.  eHelp is
15          neither averring fraud nor is it alleging facts that necessarily constitute fraud.
            **eHelp is not averring fraud because the term "fraudulent" in Cal. Bus. & Prof.**
16          **Code §17200 does not refer to the common law tort of fraud.**

17  *Id.*; *see also People*, 9 Cal. 3d at 288; *Netscape Commc'ns Corp. v. Fed. Ins. Co.*, No. C 06-

18  00198 JW, 2006 U.S. Dist. LEXIS 9569, at *14 (N.D. Cal. Feb. 22, 2006) ("Claims alleging

19  violations of section 17200 do not require pleading with particularity.  Generalized allegations of

20  a violation can be sufficient.").[9]

21

----

22  [8]     *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 232 (2006)
23  ("[Proposition 64] measure left entirely unchanged the substantive rules governing business and
    competitive conduct.  Nothing a business might lawfully do before Proposition 64 is unlawful
24  now, and nothing earlier forbidden is now permitted.  Nor does the measure eliminate any right
    to recover.").

25  [9]     Defendants cite *GlobeSpan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229 (C.D. Cal. 2001), for
26  the proposition that plaintiffs must state UCL claims with "reasonable particularity."
    Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to
27  Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs' Mem.") at 7.
    This requirement for "reasonable particularity," however, equates to the ordinary notice pleading
28  standard established by Rule 8, not the heightened pleading standard set forth by Rule 9.  *See*

1   Similarly, claims under section 17500 also need not be pled with Rule 9(b) specificity.

2   *Comm. on Children's Television, Inc*., 35 Cal. 3d at 212-14.  Plaintiff has more than adequately

3   alleged a UCL claim under the ordinary notice pleading standard of Rule 8 (or even under Rule

4   9(b)).   Plaintiff has specifically identified the representations that he contends are likely to

5   deceive consumers, why they are false and misleading, and why they constitute unlawful, unfair

6   and fraudulent business practices.  *See, e.g.*, ¶¶2, 3, 38, 39, 43, 46, 83, 85-97.  Courts in this

7   district have held that nearly identical allegations state a claim under the UCL.  *See Bhari Info.*

8   *Tech. Sys. Pvt., Ltd. v. Allied Boston Bank, Inc.*, No. C 05-01223 SI, 2005 U.S. Dist. LEXIS

9   40094, at *1 (N.D. Cal. Dec. 20, 2005) (denying motion to dismiss UCL claim based on

10   violations of the California Finance Code, like plaintiff Nobles' claim here).

11   **2.     Plaintiff Need Not Allege CLRA Claims with Particularity**

12   Contrary to defendants' unsupported assertion, courts have held that CLRA claims are

13   not subject to the particularity requirement of Rule 9(b).  In *Nordberg v. Trilegiant Corp.*, No. C-

14   05-3246 MHP, 2006 U.S. Dist. LEXIS 15756 (N.D. Cal. Apr. 4, 2006), defendants argued – just

15   as defendants do here – that "plaintiffs' allegations of fraud under the CLRA do not meet the

16   requirement of particularity under Rule 9(b)."  *Id.* at *28.  Judge Patel expressly rejected this

17   argument and held, in accordance with *Vess*, that Rule 9(b) is inapplicable to CLRA claims:

18   However, ***Rule 9(b) is not strictly applicable to the current action as the***
   ***CLRA is not a fraud statute***.  As noted by the court in *Vess*, "fraud is not an

19   ***essential*** element of a claim under Cal. Civ. Code §1770."   To require that
   plaintiffs prove more than the statute itself requires would undercut the intent of

20   the legislature in creating a remedy separate and apart from common-law fraud.
   Relief under the CLRA is available to those consumers who suffer "damage ***as a***

21   ***result*** of the use or employment by any person of a method, act, or, practice
   declared to be unlawful under section 1770."  Thus, for a misrepresentation to be

22   actionable under section 1770 it need only "result" in damage to the consumer.  In
   the present action, plaintiffs allege misrepresentations pursuant to different

23   subsections of CLRA's section 1770 and ***thus are not required to plead fraud***
   ***with particularity but must merely demonstrate that the misrepresentations***

24   ***resulted in harm***.

25

26   *Qarbon.com*, 315 F. Supp. 2d at 1052 (holding that the "reasonable particularity" standard is a
   corollary of Rule 8, not Rule 9).  Because plaintiff does not base his UCL claim entirely upon

27   fraudulent conduct and because the fraud prong of the UCL differs substantially from common-
   law fraud, the particularity requirement of Rule 9(b) does not apply to plaintiff's UCL claim.

28

1   *Id.* at *36 (second and third emphasis in original); *Vess*, 317 F.3d at 1105.  Indeed, defendants

2   recognize elsewhere in their motion that CLRA claims may be brought by "any consumer who

3   suffers any damage as a result of acts prohibited by CLRA."  Defs' Mem. at 11 n.8 (internal

4   citations and emphasis deleted).  Because plaintiff's CLRA claim is not a fraud claim, plaintiff

5   need not allege that claim with the particularity required by Rule 9(b).

6          Plaintiff has adequately alleged misrepresentations pursuant to §1770 and that he suffered

7   harm as a result of these misrepresentations.   ¶¶81-84.   Specifically, plaintiff alleges that

8   defendants violated five specific provisions of the CLRA by: (1) representing that their live

9   checks were "valid immediately" when they were not; (2) advertising their live checks as "valid

10  immediately" when defendants did not intend to honor the checks without first conducting a

11  further credit evaluation; (3) representing that their live check offers conferred a right to

12  immediate funds, which they did not; and (4) inserting unconscionable arbitration and choice-of-

13  law provisions into the cardholder agreements.   ¶83.   Plaintiff also alleges that he suffered

14  damages as a result of these misrepresentations.  ¶¶2-4, 28, 35, 66, 70, 78, 100.

### 3.    Plaintiff Need Not Allege His Unjust Enrichment/Common Law Restitution Claim with Particularity

16          Defendants also contend – without any authority at all – that plaintiff's claim for unjust

17  enrichment/common law restitution must comply with the heightened pleading requirement of

18  Rule 9(b).  Defs' Mem. at 7.  However, claims for unjust enrichment need only satisfy "Rule 8's

19  liberal notice pleading requirement."  *See*, *e.g.*, *Strigliabotti v. Franklin Res., Inc.*, No. C 04-

20  00883 SI, 2005 U.S. Dist. LEXIS 9625, at *31 (N.D. Cal. Mar. 7, 2005).

21          Plaintiff has adequately alleged a claim for unjust enrichment/common law restitution

22  under Rule 8's liberal notice pleading standard.  A plaintiff states a claim for unjust enrichment

23  when he/she alleges "receipt of a benefit and unjust retention of the benefit at the expense of

24  another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  Count VIII of plaintiff's

25  complaint alleges each of these elements.   ¶¶98-102.   Plaintiff alleges that as a result of

26  defendants' misrepresentations and unlawful, unfair and fraudulent business practices,

27  defendants unjustly received money in the form of assessed fees and charges at the expense of

plaintiff and the class.  ¶¶3, 4, 28, 35, 100-102.  Defendants simply ignore the allegations, which are plainly adequate under governing law.  *See Lectrodryer*, 77 Cal. App. 4th at 726.

### 4.   Plaintiff Need Not Allege His Breach of Contract Claim with Particularity

As defendants concede, plaintiff's breach-of-contract claim is not subject to the particularity requirement of Rule 9(b).  Defs' Mem. at 2.  To successfully plead a breach of contract claim, plaintiff need only allege:  (1) a contract;  (2) plaintiff's performance;  (3) defendants' breach;  and (4) damages.  *Walsh v. West Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).  Plaintiff has sufficiently pleaded these elements by alleging:  (1) that plaintiff and other class members entered into contracts with defendants by cashing, depositing, or otherwise attempting to negotiate the checks (¶¶4, 27, 35, 41, 63);  (2) the performance of plaintiff and other class members (¶¶4, 27, 63);  (3) defendants' breach of the agreements through their failure to honor the checks as promised (¶¶3, 4, 28-32, 35, 36, 39, 40, 64);  and (4) damages (¶¶2-4, 28, 35, 66, 70, 78, 100).

Defendants do not dispute that plaintiff has adequately alleged that their live checks constituted contracts.  Nor do defendants dispute that plaintiff adequately alleges breach and damages resulting from defendants' breach of contract.  Citing only one case with an argument that comprises less than half a page, defendants' contract claim argument is simply that plaintiff does not allege satisfaction of a condition precedent to contractual performance.  Defendants' argument fails, because it assumes a contract term (sufficient account funds to cover the entire live check amount) that is ***not*** part of the contract alleged by plaintiff in the FAC.

Plaintiff alleges that defendants' "live check" solicitation allowed plaintiff to write one or more checks "for any amount, up to $2,280."  ¶25.  Plaintiff wrote a single check for $2,000 – $280 less than the amount defendants represented as available immediately.  ¶27.  If defendants had not intended to offer a contract in which plaintiff could write a valid check for the full amount of $2,280 – for example, if defendants intended to limit the amount available to funds on hand in plaintiff's account – defendants could have identified that different maximum amount in their solicitations.  Instead, defendants represented that plaintiff could write the checks "for any

1    amount, up to $2,280," and plaintiff's FAC alleges that the contract offer was for that full stated

2    amount.   ¶25.   By writing the live check in accordance with the amount that defendants

3    represented would be "valid immediately," plaintiff accepted defendants' contract offer and

4    formed a fully enforceable written contract.   The contract pleaded in the FAC had no "condition

5    precedent."

6          Besides being factually incorrect, defendants' argument fails because its reliance upon

7    *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (1990), is misplaced.   In

8    *Careau*, defendant's offer letter was "conditional" and included language that "'it should not be

9    relied upon by any third party as a final commitment to make a loan.'"   *Id.* at 1389.   Thus, the

10   court determined that the letter constituted preliminary negotiations, not a contract.   *Id.*

11         Such is not the case here, nor do defendants characterize their firm offer as merely a

12   solicitation to plaintiff to make an offer.   Defendants' "live check" solicitations constituted fully

13   formed contractual offers that plaintiff and other class members could and did accept by cashing,

14   depositing or otherwise attempting to negotiate the attached checks.   Placing the parties'

15   communications in context – as the Court must (*see Lim v. TV Corp. Int'l*, 99 Cal. App. 4th 684,

16   693 (2002) ("The communications between the parties relating to the formation of a contract

17   must be read in context.")) – the solicitation's language and structure evidence defendants' intent

18   to induce immediate use of the attached checks.   ¶25.

19         First, the alleged condition on the actual solicitations is approximately 8-point font, while

20   the "valid immediately" representation and its supporting statements are all at least 12-point font.

21   *Id.*   Second, the supporting statements are designed to induce the reliance of plaintiff and other

22   class members: "Please use these checks before August 31, 2004"; "All we ask is that you use

23   them before August 31, 2004."   *Id.*   And third, the designation of a specified maximum amount

24   in non-round numbers (*i.e.*, $2,280, $13,950) conveys to reasonable consumers that defendants

25   have made a specific personalized offer that already reflects defendants' prior evaluation of the

26   consumer's credit-worthiness.

27

28

Because defendants breached their contractual obligations to plaintiff and the class by not honoring those checks, thereby causing resulting damages, the FAC validly pleads all essential elements of a claim for breach of contract.

## B.    Plaintiff's Common-Law Fraud Claims Satisfy Rule 9(b)'s Particularity Requirement

Rule 9(b) requires allegations of fraud to set forth "the time, place and nature of the alleged fraudulent activities . . . 'what is false or misleading about a statement, and why it is false.'"  *Sharp*, 2004 U.S. Dist. LEXIS 22928, at *10; *accord Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *see also Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 912 (N.D. Cal. 2005).  To the extent plaintiff's claims are covered by Rule 9(b), plaintiff easily satisfies these requirements, as the FAC identifies defendants' misrepresentations and explains in detail why they are false.

In *Slack*, Judge Patel found allegations similar to plaintiff's sufficient to satisfy Rule 9(b). 390 F. Supp. 2d at 913.  *Slack* involved a suit against financial corporations that provided consumer credit information to agencies and lenders, and provided credit-related services to consumers.  *Id.*  Plaintiff purchased a credit repair kit from one of the corporations' website, believing that the kit would provide advanced credit management services and personal assistance in improving her credit rating.  *Id.*  In her complaint, plaintiff alleged "that defendants . . . represented that the Platinum Kit [would] provide its purchasers with personalized advice on how to improve their credit, when in fact that product provide[d] only computer-generated responses."  *Id.*  Applying the heightened pleading standard under Rule 9(b), the court found that the amended complaint alleged sufficient facts to state claims under two sections of the Credit Repair Organizations Act.  *Id.*  Specifically, the Court held that "[g]ranting plaintiff the benefit of all favorable inferences, it is impossible to conclude that proof of such facts at trial could not establish defendants' liability."  *Id.*

Here, plaintiff's FAC pleads sufficient facts to satisfy each element of a fraud claim. "'The elements of fraud, which give rise to the tort for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent

to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage.'" *Norkin v. United States Fire Ins. Co.*, 237 Cal. App. 2d 435, 437 (1965).[10] The FAC alleges that plaintiff and the other class members received live check offers while residing in California, that the "valid immediately" language contained therein is false and misleading (¶¶2, 29, 43, 74, 78, 88(a)-(d), 95, 100), that defendants concealed the true facts (¶75), and that plaintiff and the other members of the class were deceived and induced into cashing the bad checks to their financial detriment. ¶¶28, 29, 33, 34, 77, 78.

The FAC also explains what is false and misleading about the language. *See Sharp*, 2004 U.S. Dist. LEXIS 22928, at *10; *accord Kaplan*, 49 F.3d at 1370; *see also Slack*, 390 F. Supp. 2d at 912. Specifically, it alleges that defendants represented that the live checks are immediately negotiable for up to the dollar amounts prominently displayed in large bold print on the attached solicitations, when in fact defendants treated the checks as valid only if the recipients later received favorable results on credit evaluations performed (without notice) after the checks were used. ¶36; *see also* ¶¶2, 29-32, 65, 69, 75, 83(b). Plaintiff cites specific examples of defendants' fraudulent solicitations and explains when and how he received them. ¶25. Accordingly, plaintiff has sufficiently alleged the time, place and nature of defendants' fraudulent conduct. *Sharp*, 2004 U.S. Dist. LEXIS 22928, at *10.

### 1.    Plaintiff Adequately Pleads a Misrepresentation and "Falsity"

Defendants' principal argument is that plaintiff cannot adequately allege a misrepresentation or "falsity" because defendants' live check solicitation included vague, fine-print footnote language stating that "[a]ccess to your account is subject to availability of funds." This argument fails because the footnoted language cannot as a matter of law overcome the misleading nature of the solicitation as a whole.[11]

---

[10]    Of course, federal courts sitting in diversity must apply the substantive law of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[11]    Although couched in terms of "misrepresentation" and "falsity," defendants' argument is more accurately characterized as an attempt to challenge plaintiff's "justifiable reliance." Defendants essentially argue that their vague, fine-print disclaimer made it unreasonable for

1    The FAC alleges that defendants' "live check" loan solicitations contained the following

2  false statements: "Can be written for any amount up to [amount].*   Your checks are valid

3  immediately!"   As plaintiff alleges, these statements were false because (1) plaintiff and class

4  members could not actually write a check "up to" the stated amount, and (2) defendants' checks

5  were not actually "valid immediately" in the amount stated, but were subject to a subsequent

6  credit evaluation.   ¶¶25, 26, 29, 75, 88(a)-(d), 95.   Thus, plaintiff has adequately alleged

7  misrepresentations and "falsity."

8    Nothing about defendants' vague, fine-print disclaimer changes the fact that defendants'

9  statements were knowingly false.   Nor does defendants' fine-print language prevent plaintiff

10 from stating a claim.

11    As an initial matter, defendants' fine-print disclaimer is so vague as to be meaningless.

12 Nothing in that disclaimer puts typical consumers on notice that defendants intended their live

13 check offer to be subject to a pre-approval credit check to confirm the availability of sufficient

14 funds or sufficient bank credit to cover the full amount of the endorsed check.   To the extent

15 defendants' disclaimer may be understood at all, it is susceptible to a variety of readings –

16 including, *inter alia*, that the consumer should take care (as Mr. Nobles did) to stay within the

17 credit limit specified in large bold print.   This is surely the most logical reading of defendants'

18 disclaimer, given that the "account" referred to is a credit line, not an ordinary demand account

19 with a set amount of funds, and given that defendants' alternate reading completely contradicts

20 the promise of immediately available funds in much larger print at the top of the solicitation.

21 ¶30.   The quoted language also could reasonably be construed to mean that defendants' offer is

22 limited to recipients who have valid MBNA accounts – for example, accounts that contain a

23 positive balance or as to which a line of credit has been previously authorized.   Whatever

24

25 plaintiff and other class members to rely on the knowingly false statements written in much
   larger print.  *See* Defs' Mem. at 8.  Defendants likely avoid the "justifiable reliance" label in
26 their briefing because they know that the issue of reasonable reliance is ordinarily "a question of
   ***fact*** for the jury," and that such an issue may only be decided as a matter of law "if the facts
27 permit reasonable minds to come to just one conclusion."  *Boeken v. Philip Morris, Inc.*, 127 Cal.
   App. 4th 1640, 1666 (2005) (emphasis in original), *cert. denied*, 126 S. Ct. 1567 (2006).

28

1   defendants intended to be the true meaning of their vague and ambiguous disclaimer, however, it

2   would be improper to resolve that ambiguity in ruling on a motion to dismiss.  *See Plumbers &*

3   *Steamfitters Local Union 342 v. Calpine Corp.*, No. C 02-05376 JSW, 2005 U.S. Dist. LEXIS

4   4890, at *6 (N.D. Cal. Feb. 11, 2005) (holding that ambiguous language presented "genuine

5   issues of material fact regarding the parties' intent and the meaning of the provisions").

6          Defendants' argument based on its fine-print disclaimer also fails because California

7   plaintiffs have been held to state viable fraud claims in comparable situations, where a

8   defendant's knowingly false statement is contradicted by the fine print.  In *Winn v. McCulloch*

9   *Corp.*, 60 Cal. App. 3d 663 (1976), the California Court of Appeal held that plaintiffs stated a

10  viable claim for fraud even though defendants' alleged misrepresentations were subject to a fine-

11  print disclaimer that all such representations were "subject to change without notice."  *Id.* at 670-

12  71.   The court emphasized that the disclaimer was in much smaller print than defendants'

13  misrepresentations, and that the disclaimer's actual meaning may not have been obvious.  *Id.* at

14  671.   The same is true here: defendants' disclaimer was written in fine print and is vague,

15  ambiguous and entirely unclear.[12]

16          **2.      The FAC Sufficiently Pleads Reliance, Materiality and**
                **Damages**
17

18          Defendants' final argument with respect to plaintiff's fraud claims is that plaintiff has

19  failed adequately to allege "causation" because he has not alleged that "any representation in the

    check offer itself was a material ***cause of his check's being dishonored***."  Defs' Mem. at 11.

20  This   argument   misstates   the   basic   law   of   fraud.    Plaintiff   need   not   plead   or   prove   that

21

22

23  ────────────────────────

    [12]      The cases cited by defendants do not support their argument.  Defendants cite *Sprewell v.*

24  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and *Shwarz v. United States*, 234 F.3d
    428, 435 (9th Cir. 2000), for the general proposition that a court need not take allegations in a

25  complaint as true if they are contradicted by other judicially noticeable facts.  Neither *Sprewell*
    nor *Shwarz* articulated this principle in the context of a fraud claim, and defendants have not

26  pointed to any judicially noticeable material that contradicts plaintiff's allegations.  To the extent
    defendants rely on the general procedural rule articulated in *Sprewell* and *Shwarz* to make a

27  substantive argument that plaintiff cannot state a fraud claim under California law, that argument
    is clearly foreclosed by the cases cited above, which actually address the requirements for

28  pleading and proving fraud.

1   defendants' misrepresentations caused defendants' own wrongful conduct (*i.e.*, the failure to

2   honor plaintiff's check).   Plaintiff need only allege that defendants' misrepresentations caused

3   plaintiff and class members to suffer damage.   *Norkin*, 237 Cal. App. 2d at 437 (discussing the

4   elements of fraud).

5        The FAC easily satisfies this requirement.   Plaintiff alleges that he and other class

6   members would not have attempted to negotiate checks had they known, contrary to defendants'

7   "valid immediately" assertions, that the validity of defendants' "live checks" depended on a

8   subsequent credit evaluation.   ¶¶77, 78.   Plaintiff also alleges that he and other class members

9   incurred damages as a result of defendants' misrepresentations.

10        Defendants' citations to cases involving persons "who chronically write[] bad checks"

11  are irrelevant.   *See* Defs' Mem. at 12.   Defendants have made no showing (nor could they) that

12  plaintiff Nobles "chronically writes bad checks."   More importantly, none of the cases

13  defendants cite involved facts like these, where plaintiff and other class members only wrote the

14  checks at issue after defendants assured them that they could and that the checks would be "valid

15  immediately."   ¶¶3, 28, 29, 34, 35, 66, 69, 70, 78, 79, 87, 96; *cf.* Defs' Mem. at 12 (citing *Fetter*

16  *v. Wells Fargo Bank Texas, N.A.*, 110 S.W.3d 683, 688 n.6 (Tex. App. 2003); *Daniels v. PNC*

17  *Bank, N.A.*, 738 N.E.2d 447, 451 (Ohio App. 2000); and *Kruse v. Bank of America*, 202 Cal.

18  App. 3d 38, 60-61 (1988)).

19

20

21

22

23

24

25

26

27

28

1

## V.      CONCLUSION

2        For the foregoing reasons, the Court should deny defendants' motion.   Alternatively,

3    plaintiff respectfully requests leave to amend.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,

4    806 F.2d 1393, 1401 (9th Cir. 1986) (When the pleading is dismissed for failure to state a claim,

5    "leave to amend should be granted unless the court determines that the allegation of other facts

6    consistent with the challenged pleading could not possibly cure the deficiency.").

7    DATED:  September 26, 2006                    Respectfully submitted,

8                                                 LERACH COUGHLIN STOIA GELLER
                                                      RUDMAN & ROBBINS LLP
9                                                PATRICK J. COUGHLIN
                                                 AZRA Z. MEHDI
10                                               EX KANO S. SAMS II
                                                 JAMES G. GILYARD

11

12
                                                 _____
                                                         s/ EX KANO S. SAMS II
13                                               EX KANO S. SAMS II

14                                               100 Pine Street, Suite 2600
                                                 San Francisco, CA  94111
15                                               Telephone:  415/288-4545
                                                 415/288-4534 (fax)
16
                                                 LERACH COUGHLIN STOIA GELLER
17                                                   RUDMAN & ROBBINS LLP
                                                 BONNY E. SWEENEY
18                                               655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
19                                               Telephone:  619/231-1058
                                                 619/231-7423 (fax)
20
                                                 ALTSHULER, BERZON, NUSSBAUM,
21                                                   RUBIN & DEMAIN
                                                 MICHAEL RUBIN
22                                               CLAIRE PRESTEL
                                                 177 Post Street, Suite 300
23                                               San Francisco, CA  94108
                                                 Telephone:  415/421-7151
24                                               415/362-8064 (fax)

25                                               Attorneys for Plaintiff

26   S:\CasesSD\MBNA Live Check\OMD00033792.doc

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) - C-06-03723-SBA                    - 17 -

1

<u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on September 26, 2006, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

4   mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5   have mailed the foregoing document or paper via the United States Postal Service to the non-

6   CM/ECF participants indicated on the attached Manual Notice List.

7

                                         <u>s/ EX KANO S. SAMS II</u>

8                                     EX KANO S. SAMS II

9                                     LERACH COUGHLIN STOIA GELLER
                                         RUDMAN & ROBBINS LLP

10                                   100 Pine Street, Suite 2600
                                 San Francisco, CA  94111

11                                   Telephone:  415/288-4545
                                 415/288-4534 (fax)

12                                   E-mail:ExKanoS@lerachlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 4:06-cv-03723-SBA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrick J. Coughlin**
  patc@lerachlaw.com e_file_sf@lerachlaw.com

- **John Robert Lawless, Jr**
  john_lawless@aporter.com stacie_james@aporter.com;laurence_hutt@aporter.com

- **Azra Z. Mehdi**
  azram@lerachlaw.com
  e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com;jdavis@lerachlaw.com

- **Claire P. Prestel**
  cprestel@altshulerberzon.com cbrown@altshulerberzon.com

- **Michael Rubin**
  mrubin@altshulerberzon.com mpuleo@altshulerberzon.com

- **Ex Kano S. Sams, II**
  exkanos@lerachlaw.com

- **Bonny E. Sweeney**
  bsweeney@lerachlaw.com tturner@lerachlaw.com;E_file_sd@lerachlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Gregory A. Ellis
Arnold & Porter LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844

James Gilyard
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street
Suite 2600
San Francisco, CA 94111

Laurence J. Hutt
Arnold & Porter
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
```