IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD NOBLES, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MBNA CORPORATION, et al.<br><br>　　　　　Defendants. | No. C 06-3723 CRB<br><br>**ORDER OF FINAL APPROVAL** |

　　　This matter comes before the Court for final approval of the parties' stipulated Settlement Agreement and an application for attorneys' fees and costs. A final fairness hearing was held on June 19, 2009. After considering the arguments made in the pleadings and at oral argument, the Court hereby GRANTS final approval of the Settlement. The Court GRANTS the reimbursement of $129,529.75 in costs and GRANTS a service award to Lead Plaintiff Donald Nobles in the amount of $2,500. The Court GRANTS Plaintiffs' Counsel twenty-five percent of the common fund in attorneys' fees, as described herein.

## BACKGROUND

　　　Defendants MBNA Corporation, et al. (MBNA) are a bank which allegedly mailed to current and potential customers false and misleading solicitations for credit card checks labeled "Access Check[s]". The checks were advertised as capable of being written for any

amount up to $2,280. Yet when customers used these checks, many encountered problems. Customers borrowing up to the full amount of their available credit were subsequently charged insufficient funds fees and/or overlimit fees after finance charges and other fees caused the customers' balances to exceed their limits.

The lawsuit was filed on June 12, 2006. On January 19, 2007, the Court denied Defendants' motion to dismiss. The parties subsequently engaged in settlement negotiations with the mediation assistance of Hon. William J. Cahill. Following extensive, arm's length settlement negotiations, Plaintiff submitted the Final Settlement Agreement on December 5, 2008. The Court preliminarily approved the settlement and certified the Settlement Class on January 29, 2009 and held the final fairness hearing on June 19, 2009.

Under the terms of the settlement, Defendants have agreed to distribute $6.325 million for the benefit of the class (minus $2,500 as a service award to Lead Plaintiff Donald Nobles) as well as $500,000 to cover all costs, expenses and fees relating to class notice and administration of the settlement. Over 200,000 copies of the mailed and electronic notice were distributed to Settlement Class Members. In addition, the Published Notice appeared in the national edition of *USA Today* on March 11, 2009. No objections have been filed by class members.

## DISCUSSION

I.  Approval of the Settlement and Plan of Allocation

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." In order to approve a final settlement in a class action, the Court must find that the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In making such a determination the Court may consider, inter alia, the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and

**United States District Court**
For the Northern District of California

(8) the reaction of the class members to the proposed settlement. See Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982). The Court has discretion in evaluating a proposed settlement, but its "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Id.

The fair, reasonable, and adequate standard is met here. The Settlement negotiations were completed only after the matter had proceeded through extensive discovery and several motions. Over 220,000 pages of documents were produced by Defendants. Counsel therefore had sufficient information to make an informed decision regarding the merits of the Settlement at this stage in the litigation.

The Settlement is also appropriate given the inherent difficulty of prevailing in class action litigation. The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). Plaintiff's claim has survived a motion to dismiss, but success is not guaranteed if this matter were to proceed to jury trial. In particular, there could be reasonable disagreement regarding what portion of losses incurred by Class Members was attributable to Defendants' purportedly misleading solicitations as opposed to other factors. Although the Class potentially could have achieved a greater recovery, Class Counsel is acting within its reasoned judgment in opting to settle the matter now.

The amount agreed to by the parties is within the range of reasonableness. The parties relied on the calculations of MBNA Senior Vice President and Existing Customer Marketing Executive Matt Schlitz, who, according to Plaintiff's Counsel, "is an executive familiar with Defendants' business practices during the period." Based on his calculations, to which Plaintiff did not object, the Settlement represents an eighty-five percent recovery of the fees and interest collected by Defendants as a result of the alleged improper conduct. There is no

reason to find that the Settlement amount agreed upon here is unreasonable so as to trump the parties' agreement.

The Settlement Agreement resulted from arm's length negotiations between experienced counsel. The recommendation of Plaintiff's counsel following extensive negotiations is entitled to great weight. See Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979). Counsel for Plaintiff is well-known for its experience in class action litigation. Defendants are similarly well-represented by Arnold & Porter, LLP. The Settlement came about only after both sides placed significant resources into negotiations and preliminary motions. The parties also engaged in extensive mediation.

It is worth noting that no objectors have come forward to challenge the settlement, while only three members of the class have opted out of the Settlement. In accordance with the Court's preliminary order, the claims administrator has distributed over 200,000 copies of the mailed and electronic notice to Settlement Class Members. Notice was also published in *USA Today*. The lack of opposition further suggests that the Settlement is a fair, reasonable, and adequate resolution of this matter. The Settlement is hereby APPROVED.

The Court will also approve the Plan of Allocation. Assessment of a plan of allocation is governed by the same standard of review applicable to the settlement as a whole; the plan must be fair, reasonable, and adequate. See Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1284-85 (9th Cir. 1992).

The Plan of Allocation was negotiated by both sides based on the calculations done by Matt Schlitz. The proposed Plan attempts to reimburse Class Members for fees charged to them in connection with Access Check solicitations. The amount to be received by each Class Member is based on the number of fees he or she was charged in connection with Access Check. The Court finds and concludes that the formula for the calculation of the claims provides a fair and reasonable basis upon which to allocate the proceeds of the Settlement Fund. The Court further finds and concludes that the Plan of Allocation, as set forth in the Notice, is in all respects fair and reasonable. The Court APPROVES the Plan of

**United States District Court**
For the Northern District of California

1 Allocation as set out in Plaintiff's Notice of Motion for Final Approval of Class Action
2 Settlement.

3 II.     Application for Attorneys' Fees and Reimbursement of Expenses

4     Plaintiff's Counsel seeks (1) reimbursement of $129,529.75 in expenses; and (2) an
5 award of attorneys' fees of $3.2 million, constituting approximately thirty percent of the
6 common fund. The Court uses the term "common fund" in this instance to mean the sum
7 total of the settlement award to the class, the costs of notice and administration, attorneys'
8 costs, and attorneys' fees.

9     A.     Reimbursement of Costs

10    Plaintiff's Counsel seeks reimbursement of $129,529.75 in expenses. These expenses
11 include (1) photocopies; (2) postage costs; (3) telephone and facsimile costs; (4) overnight
12 delivery fees; (5) filing and other witness fees; (6) court reporters; (7) online research costs;
13 (8) mediation fees; and (9) meals, hotels, and transportation. The Court finds that these
14 expenses are reasonable and the type typically billed by attorneys in the marketplace, see
15 Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994), and therefore shall be reimbursed out
16 of the common fund. Counsel's request for reimbursement of costs is hereby APPROVED.

17    B.     Attorneys' Fees

18    To the certain consternation of Plaintiff's Counsel, the appropriate award of attorneys'
19 fees is where the Court parts company with Counsel's proposal. Counsel seeks an award of
20 $3.2 million in attorneys' fees (approximately thirty percent of the common fund), but the
21 Court determines that an award of twenty-five percent of the common fund is the appropriate
22 award in this case.

23    Under Ninth Circuit law, reasonable attorneys' fees may be based either on a
24 percentage of the fund recovered for the class or on the lodestar figure, a calculation of the
25 number of hours the prevailing party reasonably expended on the litigation multiplied by a
26 reasonable hourly rate. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir.
27 2002). Under the percentage of the fund method, the "benchmark" recovery for attorneys'
28 fees is twenty-five percent. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th

5

Cir. 1989). "That percentage can then be adjusted upward or downward to account for any unusual circumstances involved in [the] case." Id. "Ordinarily, however, such fee awards range from twenty to thirty percent of the fund created." Id.

The Ninth Circuit has set forth five factors as pertinent to evaluating the reasonableness of a fee request: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. See Vizcaino, 290 F.3d at 1048-50. After looking at these factors, the Court determines that an award of twenty-five percent of the common fund is appropriate.

Counsel contends that it achieved an "outstanding result" for the Class, and therefore is entitled to a higher reward. The Court agrees that the eighty-five percent recovery for the class is significant, but not so extraordinary as to warrant a thirty percent award. Several factors convince the Court that the twenty-five percent benchmark used by the Ninth Circuit is appropriate here. While the Settlement was the product of extensive mediation, it was settled without objection from the Defendants or objections from Class Members, removing two obstacles often faced by Plaintiff's Counsel in class actions. The Court notes that Class Counsel is highly experienced in class action litigation, suggesting that the litigation may not have been as difficult and time consuming as it would have been for others. The Court also finds that liability in this case was not exceedingly difficult to establish, particularly as to the solicitation received by Lead Plaintiff Donald Nobles.

Counsel points to its perseverance in achieving a broad class certification– noting that there were at least 34 different types of Access Check offers made to Class Members, with varying degrees of misleading material. Counsel argued at the Fairness Hearing that it could have pursued a settlement based only on the "low-hanging fruit" that was the solicitation received by Lead Plaintiff Donald Nobles, which Counsel argues was one of the most misleading solicitations. Instead, Counsel expended effort pursuing the case further and forging a settlement to benefit a wider range of consumers, thereby plucking the "high-hanging fruit" as well.

6

The Court notes that Counsel only briefly discussed the varied nature of the Access Check solicitations in its settlement submissions to the Court. Counsel devoted more time to explaining why the solicitations were similar. For example, Counsel noted that "certification of this class action was possible based on the uniformity of representations made in the Access Checks and the predominance of common issues notwithstanding the minor design, stylistic and language differences in the solicitations." Nor did Plaintiff's Counsel provide examples of other solicitations in its final settlement documents to buttress its claim that the solicitation received by Lead Plaintiff Donald Nobles was a far worse misrepresentation than others. In any case, a more substantial settlement also leads to a more substantial recovery in attorneys' fees. The efforts that Plaintiff's Counsel made will be rewarded with a percentage of a larger fund. Counsel's efforts do not, however, justify deviating from the twenty-five percent benchmark preferred by the Ninth Circuit.

Finally, Counsel cites to a litany of cases where courts have awarded higher fees. The Court recognizes that it has the discretion to award greater recovery to Counsel, if the circumstances so warrant. Under the circumstances of this case, the Court holds that a fee award of twenty-five percent, the Ninth Circuit benchmark, is appropriate.

Unlike in many settlements, here any amount not awarded in attorneys' fees goes back to Defendants. Accordingly, attorneys' fees need not be calculated from the net settlement fund for the sake of the class. Courts have also often determined that the net settlement fund should be used to encourage litigants to keep costs down. See, e.g., Morganstein v. Esber, 768 F. Supp. 725, 728 (C.D. Cal. 1991) (awarding attorneys' fees based on net settlement fund appropriate because it encourages diligence in controlling expenses). While this is a valid concern whether or not any diminishment in recovery goes to the class, the Court finds that because the costs claimed by Plaintiff's Counsel were both reasonable and relatively small, use of the net settlement fund for calculating attorneys' fees is not necessary here.

The award will be calculated as follows: $6.325 million to Class Members plus $500,000 for the costs of notice and administration plus $129,529.75 in costs, equaling $6,954,529.75, which represents seventy-five percent of the common fund. The amount

7

awarded in attorneys' fees is therefore $2,318,176.58, representing twenty-five percent of the common fund.

## CONCLUSION

Based on the foregoing, the Court Hereby GRANTS final approval of the Settlement, GRANTS reimbursement of expenses in the amount of $129,529.75, GRANTS a service award to the Lead Plaintiff in the amount of $2,500, and GRANTS approval of $2,318,176.58 in attorneys' fees.

**IT IS SO ORDERED.**

Dated: June 29, 2009



CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

8